**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alan KAYE, Defendant-Appellant.**

No. 84–1863.

United States Court of Appeals,
Tenth Circuit.

Dec. 27, 1985.

Steve Soltis, Asst. Federal Public Defender (David E. Booth, Federal Public Defender, with him on the briefs), Oklahoma City, Okl., for defendant-appellant.

Roger Hilfiger, U.S. Atty. (Lynda C. Burris, Asst. U.S. Atty., with him on the brief), Muskogee, Okl., for plaintiff-appellee.

Before McKAY and SETH, Circuit Judges and GREENE,* District Judge.

J. THOMAS GREENE, District Judge.

This appeal is taken by Alan R. Kaye from the trial court's refusal to grant a mistrial after a government agent witness and the prosecutor made what appellant believes were improper comments on appellant's silence and right to remain silent. The appellant's claim arises out of comments made by the agent witness and prosecutor to answer or rebut certain inferences raised by defense counsel regarding the nonexistence of handwriting exemplars of the defendant and the prosecution's failure to obtain or call a handwriting expert. We find that the trial court did not commit error by refusing to grant a mistrial because, given the context of the statements, they simply were a fair reply to defense counsel's questioning and statements, and did not constitute inappropriate comment on appellant's silence and right to remain silent.

## FACTUAL BACKGROUND

The appellant was charged in a six count indictment by a Grand Jury in the Eastern District of Oklahoma on November 10, 1983. Counts one, three and five charged, respectively, conspiracy to import cocaine into the United States in violation of 21 U.S.C. § 963, conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and conspiracy to travel in interstate and foreign commerce with intent to distribute cocaine in violation of 18 U.S.C. § 371. Counts two, four and six charged respectively the substantive offenses alleged in the conspiracy counts. The appellant was convicted of the conspiracy counts and acquitted of the substantive counts in a three day jury trial which commenced April 9, 1984. On June 8, 1984, the defendant was sentenced to a term of ten years on count one, ten years on count three and five years on count five, all to run concurrently.

The evidence at trial showed the appellant's involvement in a scheme to import cocaine from Columbia, South America to Talihina, Oklahoma during the summer of 1982. The Federal Bureau of Investigation uncovered a smuggling attempt during the summer of 1983 that led to the charges filed against the appellant for his involvement in the earlier scheme. Two pilots who pleaded guilty to the 1983 scheme confessed their involvement in the earlier scheme and implicated the appellant who was involved only in the earlier scheme. Most of the evidence against the appellant was the testimony of the pilots regarding their personal involvement with appellant in the conspiracies, in the purchase of an aircraft and in the location of a landing strip to be used in the importation.

At trial there was a conflict in evidence regarding where the appellant was on July 11, 1982. In addition to the direct testimony of a Mr. Engelhart, one of the pilots who pleaded guilty to the 1983 scheme, placing the appellant in Oklahoma at the time alleged, the government introduced registration records kept by the Holiday Inn in Idabel, Oklahoma, which contained a signature purported to be that of the appellant and which would place the appellant in Oklahoma during the alleged time. The records were admitted without objection on the understanding that someone had registered in the appellant's name, but without any understanding as to whether the appellant did or did not so register. The appellant testified in his own behalf that he had never been in Oklahoma prior to the criminal proceedings. Appellant presented an alibi that he was with his cousin on July 11, 1982, in North Carolina and that therefore he could not have signed the hotel registration, suggesting that someone had used his name. At defense counsel's request, the defendant produced three handwriting samples in court and entered them into evidence. He then looked at the hotel records

---

* Honorable J. Thomas Greene, United States District Judge for the District of Utah, sitting by designation.

and admitted that, "yes, it does look like my signature."

On cross-examination of FBI agent Jerry Thomason, defense counsel asked whether the agent had requested from the defendant, through the United States Attorney's office, handwriting exemplars for the purpose of comparing them with the hotel registration records. The agent stated that he had not. On redirect examination, the prosecutor asked why the agent had failed to make such a request and the agent gave two reasons. First, agent Thomason stated:

> At the time Mr. Kaye was arrested he made it very clear that he didn't want to talk, didn't want to cooperate, that he wanted the advice of counsel. And under the law, when a man says that we're obliged and we always abide by that, and we cease any attempts to interview or extract any other information.

Regarding the second reason, agent Thomason stated that he had not requested that the appellant be compelled to give handwriting exemplars because such exemplars from an uncooperative person are easily disguised.

During defense counsel's closing arguments, he argued that the reason the FBI had not requested handwriting exemplars was because the FBI was afraid that such exemplars would constitute exculpatory evidence. He stated:

> All they had to do was file a motion in this court to compel this man from the day he was arrested until today to give samples of his handwriting and let the FBI test it. Let them test it. And if it showed up positive, come in here and testify to it. That's not a rabbit that we're chasing. That is the independent evidence. You are not experts on handwriting, the prosecutor is not an expert on handwriting, I'm not. We know nothing about it except what it looks like. We're not experts. They have them. Where are they? Where are they, ladies and gentlemen? That's the independent evidence, that is the evidence above and beyond, above and beyond any doubt

that Alan Kaye was in Idabel, Oklahoma, on July 11th, 1982. Ask Mr. Baker where that expert is when he gets up here. Have Mr. Baker tell you where he is and why he didn't bring him before you. Now if Mr. Baker answers that to your satisfaction, then convict Alan Kaye. It's that simple.

The prosecutor, Mr. Baker, accepted defense counsel's challenge and attempted to answer the question in the following way:

> And why didn't we make him give us the samples, that's the question he wanted us to answer. Folks, use your common sense. What did Mr. Thomason tell you? He said, when we arrested him he didn't want to talk to us, wouldn't cooperate. Oh, yes, and he said, but there's a way that you can come in here and get a court order and you can make them give you handwriting.... They made a big deal out of it, why didn't the government make him, why didn't they make him give his handwriting? Folks, common sense. You can take a mule to water but you can't make him drink. You can take him to the document and say, give us your handwriting. Well, you just stop and think a minute. If I came up to you and had evidence and [was] going to use it in trial, and I asked you, give me your signature, could you write it a little littler? Do you think you could change it a little bit? Would you try to change it a little bit?

The prosecutor then stated that he was confident in the jury's ability to make comparisons of the signature on the hotel registration with the appellant's signatures obtained in court and elsewhere, without the assistance of an expert. During the course of Mr. Baker's closing argument, as quoted above, defense counsel objected to the statements and asked for a mistrial, which request the trial court denied.

## DEFENDANT'S FIFTH AMENDMENT RIGHT TO SILENCE

Defendant contends that the testimony of the FBI agent and the government prosecutor's comments in response to inquiry

as to why the FBI had not sought a court order to compel the defendant to provide handwriting exemplars rise to the level of a constitutional violation, specifically the fifth amendment right to remain silent as characterized in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In other words, were the statements in substance and effect comments on the defendant's post-arrest silence to impeach defendant's in court testimony? In *Doyle v. Ohio,* the United States Supreme Court held that a suspect who has been apprised of his rights in accordance with *Miranda v. Arizona,* has an implicit assurance that his silence will not be used to impeach an alibi or explanation subsequently offered at trial. 426 U.S. at 618, 96 S.Ct. at 2245. In quoting *United States v. Hale,* the Court stated:

> [W]hen a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case an unfavorable inference might be drawn as to the truth of his trial testimony.... Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from *Miranda* warnings that this would not be the case.

Id. at 619, 96 S.Ct. at 2245 [quoting 422 U.S. 171, 182–83, 95 S.Ct. 2133, 2139–40, 45 L.Ed.2d 99 (1975) (White, J., concurring) ]. *Doyle* involved a prosecutor's persistent questioning during cross examination regarding why the defendant had failed at the time of arrest to tell the police the alibi he subsequently testified to at trial. The implication was that such failure only showed that the alibi had been concocted after arrest and before trial. Such use of the defendant's post-arrest silence, the Court held, was improper. *Id.,* 426 U.S., at 619–20, 96 S.Ct. at 2245–46.

The appellant cites *United States v. Massey,* 687 F.2d 1348 (10th Cir.1982) as further support for his argument. That case was similar to *Doyle* in all relevant respects. The defendant presented at trial for the first time exculpatory testimony to explain his involvement in a drug operation. The prosecutor thoroughly questioned the defendant about his post-arrest failure to tell the authorities his exculpatory story and commented upon it in an effort to impeach the defense. *Id.* at 1351. Relevant portions of the record are quoted in the case, and this Court has acknowledged that such a direct and intentional questioning of the defendant's post-arrest silence violates due process.

Taken out of context, as the defendant would have us do, the statements by the government agent and the prosecutor could be construed as impermissible comment on the defendant's post-arrest silence. But that comment must be examined in context to determine the proper interpretation to be given. Examined in context, both situations claimed to be objectionable by the appellant actually were in response to questions and arguments raised by defense counsel. In the first situation, defense counsel had sought to imply that Agent Thomason, an experienced agent, should have required exemplars and follow-up expert examination in order to establish that defendant's signature was on the hotel registration. On redirect, the prosecutor was merely following up this line of questioning by allowing the agent to explain that an uncooperative individual can affect the ability of an expert to make conclusive findings. In the second situation, the prosecutor was responding to statements defense counsel had made in his closing argument that due to the lack of any expert handwriting testimony by the government, the jury should infer that the defendant's signature was forged. The prosecutor's comments were in rebuttal to the statements made by defense counsel, not for the purpose of

using his post-arrest silence to impeach his trial testimony. The record is devoid of any question or comment concerning why the appellant at the time of arrest did not tell the FBI of his exculpatory story later given at trial.

We find no error, reversible or otherwise, in the comments of the government agent and the prosecutor in the context of this case.

Since the case was argued, defendant filed a Motion to Set Bail Pending Appeal. In view of the decision of the Court herein, the Motion is denied as moot.

AFFIRMED.