[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 26, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11194
Non-Argument Calendar

_____

D. C. Docket No. 06-00103-CR-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OLLIE JAMES FRYE, JR.,
a.k.a. Chicken Frye,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(September 26, 2007)**

Before BLACK, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Ollie James Frye, Jr., appeals his convictions for conspiracy to possess with intent to distribute cocaine and conspiracy to possess with intent to distribute methamphetamine, each in violation of 21 U.S.C. § 846. Frye asserts that the district court abused its discretion in permitting the Government to question Frye about his refusal to testify before the grand jury.

Prior to his indictment, Frye declined a request by the Government to testify before the grand jury that ultimately indicted him. He testified at trial that he had no involvement in the conspiracy and had only minimal associations with the alleged co-conspirators who had testified as Government witnesses. Over Frye's objection, the district court permitted the Government to question Frye as to whether he had been invited to testify before the grand jury and his refusal to do so. Frye asserts that permitting this line of questioning constituted improper impeachment, as the probative value was slight and the threat of prejudice great. Frye argues the error was not harmless.

When preserved by the defendant in the district court, we review objections to evidentiary rulings for abuse of discretion. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007). If a trial was infected by an improper evidentiary ruling, we review the record to determine if the error was harmless:

> [A] non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the

2

verdict or had but very slight effect. If one can say with fair assurance that the judgment was not substantially swayed by the error, the judgment is due to be affirmed even though there was error.

*United States v. Hornaday*, 392 F.3d 1306, 1315-16 (11th Cir. 2004) (quotations, citations, and ellipsis omitted).

A witness's credibility may be impeached by a prior inconsistent statement so long as "the statements are indeed inconsistent." *United States v. Hale*, 95 S. Ct. 2133, 2136 (1975). Silence is typically too ambiguous to carry probative weight, and absent an inconsistency between the witness's silence and his later exculpatory testimony, "proof of silence lacks any significant probative value and must therefore be excluded." *Id.* A testifying defendant's choice to remain silent may have probative value as being inconsistent with present testimony "where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation." *Id*. Where the Government seeks to impeach the defendant's credibility with his prior silence, it must satisfy the threshold evidentiary question of whether, in the circumstances of the case, the defendant's silence is sufficiently probative of the defendant's credibility as to not be substantially outweighed by its potential for prejudice. *Grunewald v. United States*, 77 S. Ct. 963, 981-82 (1957). *See also* Fed. R. Evid. 403 (providing that relevant evidence may be excluded if its

3

probative value is substantially outweighed by, *inter alia*, the danger of unfair prejudice). The potential prejudice, of course, is that the jury might infer guilt from the defendant's prior reluctance to submit to questioning. *Grunewald*, 77 S. Ct. at 982.

In *Grunewald*, the Supreme Court found reversible error in the trial court's decision to allow the defendant to be cross-examined about his decision to invoke the Fifth Amendment during his grand jury appearance because the defendant's prior silence was not necessarily inconsistent with his exculpatory trial testimony. *Id*. at 984. The Court noted the defendant's prior silence could well be consistent with innocence, given that he had previously insisted on his innocence, the grand jury proceedings were secretive, he was without counsel, and, having received notice that he was the target of the grand jury, "it was quite natural for him to fear that he was being asked questions for the very purpose of providing evidence against himself." *Id*. at 983. The Fifth Circuit similarly held "[a] defense witness's prior refusal to supply testimony to a grand jury before which he had a reasonable belief that he might be a defendant himself has no proper significance as impeachment evidence." *United States v. Rubin*, 559 F.2d 975, 983 (5th Cir. 1977), *vacated on other grounds*, 99 S. Ct. 67 (1978).[1] Although *Rubin* concerned

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior

the impeachment of defense witnesses by their silence before a grand jury, it drew no distinction between impeaching defense witnesses and the testifying defendant. *Rubin*, 559 F.2d at 982-83.

The Government contends that the questions it posed to Frye about his refusal to testify before the grand jury were proper because he had not been given *Miranda*[2] warnings, and supports its argument by citing to the Supreme Court's decision in *Jenkins v. Anderson*, 100 S. Ct. 2124, 2127-30 (1980), and our holding in *United States v. O'Keefe*, 461 F.3d 1338, 1345-49 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 1308 (2007). This argument conflates the evidentiary and constitutional components of pre-*Miranda* silence as a tool for impeaching a testifying defendant. *United States v. Zaccaria*, 240 F.3d 75, 79 (1st Cir. 2001). *See also Grunewald*, 77 S. Ct. at 983-84 (recognizing the evidentiary considerations regarding the use of a defendant's silence before a grand jury to impeach his exculpatory trial testimony "has grave constitutional overtones"). *Jenkins* and *O'Keefe* hold only that a testifying defendant's due process rights are not violated by impeachment with pre-*Miranda* silence. *Jenkins*, 100 S. Ct. at 2129; *O'Keefe*, 461 F.3d at 1346-47.

---

to close of business on September 30, 1981.

[2]*Miranda v. Arizona*, 86 S. Ct. 1602, 1624-27 (1966).

Although the government does not violate a defendant's due process rights when it impeaches his testimony with evidence of pre-*Miranda* silence, such evidence is not admissible in every instance. *Jenkins*, 100 S. Ct. at 2130 (clarifying that the decision "does not force any state court to allow impeachment through the use of prearrest silence"). In *Jenkins*, the Court cited *Hale* and *Grunewald* and explained the evidentiary standard in federal courts is that "prior silence cannot be used for impeachment where silence is not probative of a defendant's credibility and where prejudice to the defendant might result." *Id.* at 2129-30. Thus, *Jenkins* stands for the proposition that a federal prosecutor is not forbidden by the Constitution to use pre-*Miranda* silence to impeach a testifying defendant, but is bound by the evidentiary standard announced in *Hale* and *Grunewald* that the probative value of the defendant's silence must not be substantially outweighed by its potential for prejudice. *Hale*, 95 S. Ct. at 2138; *Grunewald*, 77 S. Ct. at 982.[3]

Having received an "invitation" to testify in a grand jury investigation, Frye faced the same pressures as did the defendant before the grand jury in *Grunewald*,

---

[3]Frye does not specifically argue that his due process rights were violated. His argument is based upon *Grunewald* and *Hale*, cases in which the Court eschewed discussion of constitutional error and reversed on narrower evidentiary grounds. *See Jenkins*, 100 S. Ct. at 2128 n.4. We need not decide whether Frye adequately raises a constitutional argument because like *Grunewald* and *Hale*, we vacate Frye's conviction on evidentiary grounds.

where the Supreme Court held "[i]t was . . . quite consistent with innocence for [the defendant] to refuse to provide evidence which could be used by the Government in building its incriminating chain." *Grunewald*, 77 S. Ct. at 983. Frye's refusal to take advantage of his "opportunity" to testify before the grand jury was not inherently inconsistent with his exculpatory trial testimony. Indeed, the district court found that Frye's refusal to appear before the grand jury was not inconsistent with his exculpatory trial testimony, but, nevertheless, admitted the evidence for the purpose of impeachment. This ruling amounted to an abuse of discretion, because, absent an inconsistency, silence has no probative value for impeachment. *Hale*, 95 S. Ct. at 2136. Frye's silence had "less than negligible" probative value, which was substantially outweighed by the potential that the jury might improperly infer guilt from his silence. *Grunewald*, 77 S. Ct. at 984.

The Government argues that after it asked Frye if he was given an "opportunity" to testify before the grand jury, and he denied that he had, it could question him about the response to their invitation to testify. This argument is misguided. The Government deliberately intended for its line of questioning to inform the jury of Frye's refusal to appear, and the district court erred in allowing any questioning on the topic. The potential for prejudice was only exacerbated by

7

the prolonged questioning that followed regarding the means Frye employed in communicating his refusal to testify to the U.S. Attorney.

The district court's error was not harmless. No drugs were seized in connection to the case against Frye and the only physical evidence offered by the Government consisted of telephone records from phones used by Frye and the four alleged co-conspirators in the years 2004 and 2005. All of the material Government witnesses admitted to previously lying to the FBI about their involvement in the conspiracy and about Frye's alleged involvement in the conspiracy. Each had previously pled guilty to the conspiracy and sought reduced sentences based on their cooperation with the Government to incriminate others. The case turned on the jury's perception of the alleged co-conspirators against its evaluation of Frye. The questions asked of Frye on cross-examination about his refusal to testify before the grand jury could have led the jury to infer his guilt. *Grunewald*, 77 S. Ct. at 982. Where a case is dependent on witness credibility, and little corroborating evidence was offered, allowing the Government to use improper methods to cross-examine the testifying defendant is not harmless.

After applying a harmless error analysis, we cannot "say with fair assurance that the judgment was not substantially swayed by the error." *Hornaday*, 392 F.3d

8

at 1315-16.  Accordingly, we **VACATE** Frye's convictions and **REMAND** this case for a new trial consistent with this opinion.