Filed 11/30/15  P. v. Vega CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061661 |
| v. | (Super.Ct.No. RIF1204332) |
| PATRICIA VEGA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Rafael A. Arreola, Judge. (Retired Judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

1

A car that defendant Patricia Vega was driving nearly hit a police officer's cruiser; she then continued to drive erratically until the officer stopped her. Two successive breath tests indicated that defendant had a blood alcohol content of 0.12 and 0.13 percent, respectively. Her defense was that she had a reflux disease, and that this could cause erroneously elevated breath test readings.

After a jury trial, defendant was found guilty on one count of driving under the influence (Veh. Code, § 23152, subd. (a)) and one count of driving with a blood alcohol content of 0.08 percent or more (Veh. Code, § 23152, subd. (b)). She admitted one "strike" prior (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and one 1-year prior prison term enhancement (Pen. Code, § 667.5, subd. (b)). She was sentenced to a total of five years in prison.

Defendant now contends that:

1. In the presence of the jury, the trial court misstated the law regarding breath alcohol testing.

2. The trial court erred by giving a jury instruction about a failure to deny as an adoptive admission.

We find no error. Hence, we will affirm.

I

FACTUAL BACKGROUND

On the night of September 15-16, 2012, Deputy Javier Morando was on patrol in a marked black and white police car. As he was going east, a car came out of a driveway

2

on the north side of the street and turned west. However, it swung wide, into his lane. If he had not swerved, it would have hit him.

He made a U-turn and started following the car. It went about 200 feet while straddling the center line and weaving slightly. At that point — the time was 1:08 a.m. — Deputy Morando stopped the car.

Defendant was the driver. She had bloodshot, watery eyes and her speech was slurred. A smell of alcohol was coming from her car. Defendant said she had had two 12-ounce beers, between 6:00 p.m. and 8:00 p.m. She admitted feeling "a buzz."

When defendant got out of the car, she was "unsteady," "swaying," "almost staggering." She failed one field sobriety test (the horizontal gaze nystagmus test). She said she could not perform two others (the one-leg stand test and the nine-step walk and turn test) because she had knee problems. She asked Deputy Morando to give her a breath test.

At 1:48 a.m., Deputy Morando administered a preliminary breath test. Defendant's reading was 0.13 percent. When he showed her the test result, "[h]er shoulders shrugged, like they dropped." He then placed her under arrest.

Deputy Morando told defendant that she was required to take an evidentiary (as opposed to a preliminary) test; he gave her the option of either a breath test or a blood test. She chose a breath test.

The first time Deputy Morando tried to administer an evidentiary breath test, he heard "a real soft blow"; the second time, he could hear the air stop, indicating that

3

defendant had blocked the tube with her tongue. Both times, the machine read, "Insufficient volume." He warned her that, "if she didn't provide an air sample, we would have to find other means." The third time was the charm; at 2:00 a.m., defendant's reading was 0.12 percent. After the breathalyzer had counted down two minutes, Deputy Morando administered a second evidentiary breath test. This test, at 2:04 a.m., produced a reading of 0.13 percent. The prosecution called Brian Reinarz, a criminalist, as its expert on forensic alcohol analysis. He testified that the breathalyzer in this case was accurate.

In Reinarz's opinion, based on defendant's blood test readings, her blood alcohol content at 1:00 a.m. was between 0.13 and 0.14 percent. This was the equivalent of having four or five beers still in her system.

Reinarz also testified that mouth alcohol can produce inaccurate breath test results. Mouth alcohol is unprocessed alcohol in the mouth. Because it is very concentrated but very volatile, it will produce an almost impossibly high first reading and a much lower (though still high) second reading. To exclude contamination by mouth alcohol, two breath tests are conducted two minutes apart, so that any mouth alcohol has time to dissipate, and the two test results must be within 0.02 percent of each other.

According to Reinarz, two studies had shown that reflux disease does not affect the results of properly conducted breath alcohol testing. Also according to Reinarz, it was not possible, even with reflux disease, to have a consistent level of mouth alcohol.

4

The defense called Dr. Michael Hlastala, a professor of physiology, as its expert on breath alcohol testing. In Dr. Hlastala's opinion, gastroesophageal reflux disease could cause erroneously elevated breath alcohol test results.

Gastroesophageal reflux disease is heartburn resulting from the backflow of stomach contents into the esophagus. It may or may not be accompanied by laryngopharyngeal reflux, which is backflow from the esophagus into the throat. If alcohol from the stomach reaches the throat, it can cause an erroneously high breath alcohol reading. However, alcohol from the stomach that reaches the esophagus but not the throat will not affect breath alcohol readings.

Gastroesophageal reflux disease raises a person's breath test results, on the average, by 0.09. According to Dr. Hlastala, gastroesophageal reflux disease is a relatively continuous process; thus, it could result in elevated test results that do not drop off, even when conducted minutes apart. Thus, defendant's test results could be consistent with her having had only two beers, as long as she also had gastroesophageal reflux disease.

Dr. Hlastala also testified that gastroesophageal reflux disease slows down the emptying of the stomach. However, he admitted that alcohol is eliminated from the stomach in an hour, on the average, and about three and a half hours, at most. He also admitted that, if a normal female drinks two beers, her blood alcohol content would peak at 0.04 to 0.05 percent and would decline to zero within five hours. Finally, he agreed

that there is no scientific consensus about whether gastroesophageal reflux disease affects breath alcohol testing at all.

According to Dr. Khushal Stanisai, a gastroenterologist who had examined defendant, she suffered from nonerosive reflux disease. Nonerosive reflux disease is the same as gastroesophageal reflux disease, except that in gastroesophageal reflux disease, the patient has developed ulcers and inflammation, whereas in nonerosive reflux disease, the patient has not. He had not seen any evidence that defendant had laryngopharyngeal reflux.

II

THE TRIAL COURT'S ASSERTED MISSTATEMENT OF THE LAW

Defendant contends that, in a comment in the presence of the jury, the trial court misstated the law.

A. *Additional Factual and Procedural Background.*

During the direct examination of Dr. Hlastala, defense counsel asked a question (in hypothetical form) about what defendant's breath test results meant with regard to her "blood alcohol content, actual blood alcohol content . . . ?"

This exchange ensued:

"[PROSECUTOR]: . . . [I]mproper hypothetical. [¶] . . . [¶]

"Defense [counsel] may have erroneously asked him to testify as a person's blood alcohol content rather than the breath alcohol content.

"THE COURT: Do you want to correct that?

6

"[DEFENSE COUNSEL]: It is the defense's position that the blood alcohol content is what the breath alcohol content is related to.

"THE COURT: Let's not argue about it. The objection is sustained as to that. We have a breath machine. I have heard no testimony that . . . any blood was taken. But I told you the other day, it is against the law, *whether it is breath or whether it is blood, if your blood content was .08 or higher, you're violating the law*.

"Okay. So it doesn't matter whether your blood was taken with a needle or your breath was taken with a breath machine." (Italics added.)

B.     *Discussion*.

Defendant argues that the trial court's comment misstated the law, because a breath test indicating a blood alcohol concentration of 0.08 percent or more will not support a conviction under Penal Code section 23152, subdivision (b) unless the breath testing machine is accurate. In other words, she argues that the trial court's comment implicitly prevented the jury from considering her defense that her breath test readings were above 0.08 percent due to her reflux disease, and not due to her actual blood alcohol content.

Defense counsel forfeited this contention by failing to object below. Any objection to "any . . . thing whatsoever said or done at the trial" — other than jury instructions, which are subject to their own special rule — must be raised at trial in order to be preserved for appeal. (Pen. Code, § 1259; see, e.g., *People v. Houston* (2012) 54 Cal.4th 1186, 1220.) This is particularly true "when, as in this case, a timely objection

7

may have obviated any problem by permitting the court to clear up any misunderstanding that his comments may have elicited. [Citation.]" (*People v. Ramos* (1982) 30 Cal.3d 553, 576.)

Separately and alternatively, the trial court's remarks do not support the construction that defendant seeks to place on them. The trial court said, "if your *blood content* was .08 or higher, you're violating the law." (Italics added.) It did not say, "if your *breath test reading* was .08 or higher, you're violating the law." Thus, it did not either say or suggest that a breath test reading is conclusive. Rather, it stated, correctly, that blood alcohol content is the issue.

Defendant also argues that, even assuming the trial court's remark correctly stated the law under Penal Code section 23152, subdivision (b) (subdivision (b)), it misstated the law under Penal Code section 23152, subdivision (a) (subdivision (a)). Again, however, the trial court merely said, "if your blood content was .08 or higher, you're violating the law." It did not purport to say *which* law was being violated.

Later, the jury was correctly instructed on the elements of a violation of both subdivision (a) and subdivision (b). (CALCRIM No. 2110 & No. 2111.)

With regard to subdivision (a), it was instructed, among other things, that the People had to prove that "when she drove, . . . the defendant was under the influence of an alcoholic beverage"; "[i]f the People have proved beyond a reasonable doubt that the defendant's blood alcohol level was 0.08 percent or more at the time of the chemical

analysis, you may, but are not required to, conclude that the defendant was under the influence of an alcoholic beverage at the time of the alleged offense."

With regard to subdivision (b), it was instructed, among other things, that the People had to prove that "when she drove the defendant's blood alcohol level was 0.08 percent or more . . . ." It was also instructed that "[i]f the People have proved beyond a reasonable doubt that a sample of the defendant's breath was taken within three hours of the defendant's driving and that a chemical analysis of the sample showed a blood alcohol level of 0.08 percent or more, you may but are not required to, conclude that the defendant's blood alcohol level was 0.08 percent of more at the time of the alleged offense."

In light of these instructions, the jurors would have understood that the trial court's remark pertained only to subdivision (b) and not to subdivision (a).

As we have already held, the trial court did not misstate the law regarding subdivision (b). Even assuming, however, that the jury could have misunderstood the remark when it was made, these instructions would have cleared up any misunderstanding.

In her reply brief, defendant shifts her focus to the portion of the trial court's remark that stated, "So it doesn't matter whether your blood was taken with a needle or your breath was taken with a breath machine." She argues that this was not true because (at least according to her expert) breath test results can be affected by reflux disease and blood tests results cannot. However, it is simply absurd to suppose that the jury would

9

have understood the trial court's remark in this tortured fashion. Plainly, the trial court meant that, regardless of whether in a particular case the defendant is given a blood test or a breath test, the ultimate legal issue is what the defendant's blood alcohol content was (and whether this figure means that he or she was under the influence). It did not mean that the jury should disregard all of the evidence about the possible fallibility of breath alcohol testing.

Defendant briefly complains that, "in the presence of the jury, the court continuously interrupted appellant's expert['s] testimony and repeatedly expressed doubts as to the validity of the expert testimony." However, she has not raised this as a separate basis for reversal. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [brief must "[s]tate each point under a separate heading or subheading"].) She also has not explained, using reasoned argument or citation of authority, why this was error. (See *id.*) We therefore do not consider it.

Finally, defendant recounts her efforts to introduce both her medical history and her expert's testimony regarding reflux disease. However, as she concedes, this evidence was ultimately admitted. She does not claim that the trial court made any particular evidentiary ruling that was erroneous. Thus, this presents no issue for us to discuss.

We conclude that the trial court did not misstate the law.

10

## III

## JURY INSTRUCTION ON ADOPTIVE ADMISSIONS

Defendant contends that the trial court erred by giving a jury instruction on adoptive admissions.

A.    *Additional Factual and Procedural Background.*

The prosecution asked the trial court to give CALCRIM No. 357 ("Adoptive Admissions"). The prosecutor claimed the instruction was based on the evidence that, when defendant heard the preliminary breath alcohol test results, she "shrugged" or "dropped" her shoulders.

Defense counsel objected, arguing, "Her reaction is one of depression and being upset that it reads that way. I don't think in any way it is an acceptance or acknowledgement that . . . the information is correct . . . ."

The trial court observed that "it is a borderline case" but concluded, "[i]t is up to the jury to decide whether it applies." Thus, it instructed:

"If you conclude that someone made a statement outside of court that accused the defendant of the crime or tended to connect the defendant with a commission of the crime, and that the defendant did not deny it, you must decide whether each of the following is true:

"One, the statement was made to the defendant or made in her presence;

"Two, that the defendant heard and understood the statement;

11

"Three, that the defendant would, under all of the circumstances, naturally have denied the statement if she thought it was not true; and

"Four, that the defendant could have denied it but did not.

"If you decide that all of these requirements have been met, you may conclude that the defendant admitted the statement was true.  If you decide that any of these requirements has not been met, you must not consider either the statement or the defendant's response for any purpose."

B.      *Discussion*.

"It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference.  [Citation.]"  (*People v. Hannon* (1977) 19 Cal.3d 588, 597.)

The instruction related exclusively to defendant's *failure to deny* an accusation (or similar statement).  Hence, the true issue is not whether her gesture of "shrug[ing]" or "dropp[ing]" her shoulders  could be construed as an adoptive admission.  Rather, it is whether, under the circumstances, her mere failure to deny the accuracy of the preliminary breath test results could be construed as an admission.

There was sufficient evidence that the statement was made to defendant, that she heard and understood it, and that she could have denied it but did not.  The only possible dispute is as to whether she would naturally have denied the statement if it was untrue.  A juror could reasonably conclude that a person who had had only two beers more than five

12

hours earlier, as defendant claimed, would have protested that a reading of 0.13 percent had to be inaccurate.**1** While this was not the only possible reasonable conclusion, it was sufficient to support the trial court's decision to give the instruction.

Defendant argues that her silence was "insolubly ambiguous" (*Doyle v. Ohio* (1976) 426 U.S. 610, 617) and "of little probative force" (*United States v. Hale* (1975) 422 U.S. 171, 176) because she was effectively under arrest; thus, she may have been relying on her right to remain silent. We know of no case holding that the mere ambiguity of post-arrest, pre-*Miranda* silence makes it inadmissible per se; certainly defendant has not cited any. Rather, "[t]he probative value of a defendant's silence depends peculiarly on a careful assessment of all of the relevant circumstances. [Citations.]" (*People v. Tom* (2014) 59 Cal.4th 1210, 1236.) Defense counsel was free to argue to the jury that defendant may have been relying on her right to remain silent, but neither the trial court nor the jury was required to presume that in fact she was.

Defendant does not argue that the instruction violated her right to remain silent. She forfeited any such argument by failing to object on such grounds below. In any event, the argument would lack merit. Even assuming defendant was in custody, the "use of a defendant's postarrest, pre-*Miranda* silence is not barred by the Fifth Amendment in the absence of custodial interrogation or a clear invocation of the privilege . . . ." (*People v. Tom*, *supra*, 59 Cal.4th at p. 1236.)

---

**1** Defendant even says herself: "She may have just been surprised by the results since she had not consumed enough alcohol for such a high reading."

13

Finally, we also conclude that the claimed error was harmless under any standard. The instruction itself told the jury not to consider defendant's response to the statement "for any purpose" unless, among other things, "the defendant would, under all the circumstances, naturally have denied the statement if she thought it was not true . . . ." The jury was also told that "some of these instructions may not apply, depending on your findings about the facts of the case." (CALCRIM No. 200.) Thus, if, in fact, there was insufficient evidence that defendant would naturally have denied the statement, we may presume that the jury disregarded the evidence. (*People v. Chism* (2014) 58 Cal.4th 1266, 1299.)

IV

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

KING
J.

MILLER
J.

14