[Cite as *State v. Barrett*, 2021-Ohio-2134.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                   Court of Appeals No. L-20-1017

　　　　Appellee                                             Trial Court No. CR0201901267

v.

Davion Barrett                                             **DECISION AND JUDGMENT**

　　　　Appellant                                            Decided:　June 25, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and
Stephen P. Hardwick, Assistant Public Defender, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} Appellant, Davion Barrett, appeals the judgment of the Lucas County Court

of Common Pleas, sentencing him to eight years in prison after a jury found him guilty of

one count of felonious assault.  Finding no error in the proceedings below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On February 14, 2019, appellant and his codefendant, Melvin Ivey, were indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1) and (D), a felony of the second degree. The indictment stemmed from a fight that occurred at a Fairfield Inn in Lucas County on January 1, 2019. During the fight, Ivey picked up the victim, M.G., and dropped him on his head. Thereafter, appellant allegedly kicked M.G. in the head. As a result of the fight, M.G. suffered a fractured skull that led to the lifetime loss of half of his strength on the left side of his body, memory loss, and problems urinating.

{¶ 3} On March 6, 2019, appellant appeared before the trial court for arraignment, at which time he entered a plea of not guilty to the aforementioned charge. Following pretrial discovery, the matter proceeded to a jury trial on September 24, 2019.

{¶ 4} During his case in chief, appellant called two witnesses, including Ivey. Ivey had previously entered a plea of no contest to a charge of felonious assault relating to the altercation with M.G.

{¶ 5} On direct examination, Ivey testified that he and appellant are lifelong friends. Ivey stated that he accompanied appellant and one other male to the Fairfield Inn on December 31, 2018. Ivey had consumed alcohol prior to arriving at the hotel, but stated that he was "not really intoxicated."

{¶ 6} The men arrived at the hotel at around 11:00 p.m. They were meeting a group of friends at the hotel for a New Year's gathering. Upon arrival, the men met up

2.

with their friends and began conversing. Thereafter, Ivey heard someone calling his name from a distance. He identified the person who was calling him, D.B., and he and appellant approached D.B., who was accompanied by M.G. at the time. Ivey proceeded to give D.B. a hug. According to Ivey, M.G. "was asking who we were but was doing it in a disrespectful way." An argument between appellant and M.G. ensued. Eventually, the argument turned into a physical altercation involving others who were part of M.G.'s group of friends. Ivey testified that he grabbed appellant to prevent him from engaging in the fight, because he knew that appellant was on judicial release. However, Ivey was forced to release appellant so that appellant could defend himself against other men who were in M.G.'s group of friends.

{¶ 7} While the others were fighting, Ivey and M.G. agreed to stand by and let the fight unfold. However, Ivey noticed M.G. moving into the fight "with his hands up in a fighting stance." Consequently, Ivey grabbed M.G. around his upper body and slammed him onto the pavement. Ivey testified that M.G. was unconscious after he hit his head on the pavement. Ivey stated that "all the females that [were] around them started gathering around [M.G.] and all his friends. That, basically, ended the * * * whole fight." Thereafter, Ivey reportedly saw appellant walking back toward where his car was parked, and began to make his way back to the car as well. Notably, Ivey stated that he did not see appellant kick or stomp M.G. at any point in time.

{¶ 8} On cross examination, the state challenged Ivey's credibility by asking him why he failed to inform law enforcement that appellant was wrongfully accused and that

3.

he alone was responsible for M.G.'s injuries. Appellant's defense counsel objected, arguing that the line of questioning was improper because it violated Ivey's Fifth Amendment right to remain silent. In response, the state argued that appellant was not permitted to assert Ivey's Fifth Amendment right on behalf of Ivey, and also contended that Ivey's Fifth Amendment right not to incriminate himself ended once Ivey pled no contest and was found guilty of felonious assault. The court summarily overruled appellant's objection. Thereafter, Ivey explained that he was unfamiliar with how the court system worked, and thus did not know how to alert law enforcement that appellant was wrongfully accused. With respect to his silence, Ivey further stated that he merely followed the advice of his lawyer, who instructed him not to speak with law enforcement or the prosecutor about his encounter with M.G.

{¶ 9} At the close of the evidence at trial, the jury found appellant guilty of felonious assault. The trial court proceeded immediately to sentencing, ordering appellant to serve eight years in prison, to be served consecutively to the time imposed pursuant to a community control violation brought about by appellant's criminal conduct in this case. Thereafter, appellant filed his timely notice of appeal.

### B. Assignment of Error

{¶ 10} On appeal, appellant assigns the following error for our review:

The trial court erred by permitting the State to ask a witness why he did not previously waive his Fifth and Sixth amendment privileges.

4.

## II. Analysis

{¶ 11} In his sole assignment of error, appellant argues that the trial court erred when it overruled his objection to the state's questioning of Ivey as to why Ivey failed to inform law enforcement of appellant's innocence. In his brief, appellant clarifies that he "does not claim that the trial court violated [Ivey's] Fifth Amendment rights." Rather, appellant argues that the prejudice of the state's line of questioning outweighed any probative value attributable to Ivey's exercise of his right to remain silent, and therefore the trial court should have sustained his objection to such questioning under Evid.R. 403(A).

{¶ 12} Under Evid.R. 403(A), a trial court must exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The decision whether to admit or exclude evidence under Evid.R. 403(A) rests within the discretion of the trial court, and we will not disturb that decision on appeal absent a showing that the trial court abused its discretion. *Luettke v. St. Vincent Mercy Med. Ctr.*, 6th Dist. Lucas No. L-05-1190, 2006-Ohio-3872, ¶ 33, citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (1980). The term "abuse of discretion" implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 13} In response to appellant's contention that the trial court abused its discretion in permitting the state to question Ivey as to the reason why he failed to inform

5.

law enforcement of appellant's innocence prior to trial, the state notes that appellant did not base his objection at trial on a prejudice argument under Evid.R. 403(A). We have carefully reviewed the transcript containing the discussion between the parties and the trial court on the issue of the permissibility of the state's questioning of Ivey. We agree with the state that appellant's defense counsel did not assert that the state's questions, or Ivey's answers to such questions, would unfairly prejudice appellant. Instead, the bulk of the discussion centered on the Fifth Amendment argument appellant now abandons on appeal. Admittedly, defense counsel also briefly complained that the state's questions were "very misleading because [Ivey] has a lawyer, he has his own rights." At most, this statement could be construed as an imprecise argument that the probative value of the state's questions concerning Ivey's pretrial silence were substantially outweighed by the danger of misleading the jury. However, defense counsel failed to explain how the jury would be misled by the state's questions, and he does not raise that argument here on appeal.

{¶ 14} Under Evid.R. 103(A)(1), error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." The specific ground of objection stated by appellant at trial related to Ivey's Fifth Amendment privilege against self-incrimination and, tangentially, to the alleged danger of misleading the jury brought about by the state's questions.

6.

{¶ 15} Appellant failed to object to the state's questioning of Ivey on the basis of unfair prejudice, and therefore has forfeited all but plain error in regard to the prejudice issue. *State v. Thomas*, 2015-Ohio-5247, 54 N.E.3d 732, ¶ 8 (9th Dist.). "Plain error does not exist unless, but for the error, the outcome of the criminal proceedings would clearly have been different." *State v. Ferreira*, 6th Dist. Lucas No. L-06-1282, 2007-Ohio-4902, ¶ 11. A reviewing court should only recognize plain error "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Ahlers*, 6th Dist. Erie No. E-14-005, 2015-Ohio-131, ¶ 15, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 16} Here, appellant argues that "because there is limited-to-no probative value in asking [Ivey] why he did not waive his Fifth Amendment right to remain silent, the prejudice outweighed any limited probative value." According to appellant, such use of silence as evidence is improper when the silence is predicated upon a fear of incriminating oneself by speaking.

{¶ 17} In support of his argument, appellant cites four cases: *State v. Sabbah*, 13 Ohio App.3d 124, 468 N.E.2d 718 (6th Dist.1982); *State v. Griffin*, 6th Dist. Lucas No. L-98-1215, 2000 WL 1713850 (Nov. 17, 2000); *State v. Boyd*, 8th Dist. Cuyahoga No. 60639, 1992 WL 114592 (May 28, 1992); and *U.S. v. Hale*, 422 U.S. 171, 95 S.Ct. 2133,

7.

45 L.Ed.2d 99 (1975). Notably, all of these cases are distinguishable from the present case, as they each involve the use of evidence of the *defendant's* silence, not the silence of another witness whose credibility is under consideration. *See Commonwealth V. Hart*, 455 Mass. 230, 242, 914 N.E.2d 904 (2009) (affirming trial court's admission of impeachment evidence regarding a *witness's* pretrial silence and distinguishing that evidence from inadmissible impeachment evidence of a *defendant's* pretrial silence).

{¶ 18} Appellant asserts that there is "limited-to-no probative value" in Ivey's explanation as to why he did not inform law enforcement that he alone was responsible for M.G.'s injuries. However, later in his brief, appellant acknowledges that "credibility was especially important in this case." The state questioned Ivey on the issue of his silence precisely to impeach his credibility, and Ivey was able to answer the salient question of why he was silent. This testimony assisted the jury in weighing the merit of the state's argument versus Ivey's explanation for his silence. Therefore, we disagree with appellant's contention that the evidence elicited by the state's questions lacked probative value.

{¶ 19} Additionally, we fail to see how the evidence elicited by the state's questions was *unfairly* prejudicial to appellant. A possible inference to be drawn from Ivey's delayed disclosure of exculpatory evidence is that Ivey is fabricating this exculpatory evidence to exonerate his lifelong friend who is standing trial for a felonious assault for which Ivey had already been found guilty. To be sure, this inference casts doubt upon Ivey's credibility, and thus indirectly prejudices appellant by weakening his

8.

argument that he did not contribute to M.G.'s injuries. However, Ivey was permitted to counter this inference by explaining that he was unfamiliar with how the court system worked, did not know how to alert law enforcement that appellant was wrongfully accused, and elected to follow the advice of his lawyer who directed him to remain silent.

{¶ 20} In light of the foregoing, we find that appellant was not unfairly prejudiced by the state's questioning of Ivey on the issue of his pretrial silence. Furthermore, appellant has not shown, or even alleged, that the result of the proceedings in the trial court would have been different absent this questioning. For its part, the state elicited testimony from two eyewitnesses of the incident, who each testified that appellant stomped on M.G.'s head after Ivey slammed M.G. to the ground. With this evidence, we find that appellant cannot establish that the result of the proceedings below would have been different without the state's questioning of Ivey on his silence. Such a showing is a prerequisite to a finding of plain error under Crim.R. 52(B). *See Ferreira*, *supra*, 6th Dist. Lucas No. L-06-1282, 2007-Ohio-4902, at ¶ 11.

{¶ 21} Accordingly, appellant's sole assignment of error is not well-taken.

### III. Conclusion

{¶ 22} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

9.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.          _____
                                             JUDGE

Christine E. Mayle, J.

                                  _____
Gene A. Zmuda, P.J.                          JUDGE
CONCUR.

                                  _____
                                             JUDGE


This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.