21 A.3d 1080

**Raymond Charles LUPFER**

v.

**STATE of Maryland.**

**No. 109, Sept. Term, 2010.**

Court of Appeals of Maryland.

June 20, 2011.

Marc A. DeSimone, Jr., Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

David Simon, in his journalistic work, *"Homicide: A Year on the Killing Streets,"* translates into "street-cred"[1] rhetoric the now-well-known *Miranda*[2] rights/protections:

*"You have the absolute right to remain silent."* . . . .

Criminals always have the right to remain silent. At least once in your . . . life, you spent an hour in front of a television set, listening to this book-'em-Danno routine. You think Joe Friday was lying to you? You think Kojak was making this . . . up? No way, bunk, we're talking sacred freedoms here, notably your Fifth . . . Amendment protection against self-incrimination, and hey, it was good enough for Ollie North, so who are you to go incriminating yourself at the first opportunity? Get it straight: A police detective, a man who gets paid government money to put you in prison, is explaining your absolute right to shut up before you say something stupid.

*"Anything you say or write may be used against you in a court of law."*

Yo, bunky, wake . . . up. You're now being told that talking to a police detective in an interrogation room can only hurt you. If it could help you, they would probably be pretty quick to say that, wouldn't they? They'd stand up and say you have the right not to worry because what you say or write in this . . . cubicle is gonna be used to your benefit in a court of law. No, your best bet is to shut up. Shut up now.

---

1. One is said to have "street cred" when he or she "command[s] a level of respect in an urban environment due to experience in or knowledge of issues affecting th[at] environment[ ]." *Street Cred,* http://www.urban dictionary.com/define.php?term=street + cred (last visited 19 May 2011).

2. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966).

*"You have the right to talk to a lawyer at any time— before any questioning, before answering any questions, or during any questions."*

Talk about helpful. Now the man who wants to arrest you for violating the peace and dignity of the state is saying you can talk to a trained professional, an attorney who has read the relevant portions of the Maryland Annotated Code. . . . Take whatever help you can get.

Simon notes that, notwithstanding this popular understanding, many suspects, even after advisement, inculpate themselves willingly while being interrogated. We consider in this case a defendant that followed Simon's and *Miranda's* advice—he remained silent. Yet the State used that silence against him at trial, and now asks us to decide whether his post-arrest, post-*Miranda* silence was admissible properly against him.

Raymond Charles Lupfer ("Lupfer" or "Petitioner") challenges a judgment of the Court of Special Appeals that reasoned in its opinion that the prosecution was entitled, under the circumstances here and the "fair response doctrine," as established in *United States v. Robinson,* 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), to elicit testimony regarding the fact that Lupfer remained silent after he was arrested and advised of his *Miranda* rights. We hold, for reasons to be explained more fully *infra,* that, because Lupfer did not "open the door" sufficiently with his statements at trial regarding his pre-arrest actions and intentions, the State was not entitled to elicit testimony regarding his post-arrest, post-*Miranda* silence.

## FACTS AND LEGAL PROCEEDINGS

The State's evidence at trial was sufficient, if believed, to establish that, on 16 June 2007, Lupfer shot and killed Jeremy Yarbray ("Yarbray") outside of a residence at 159 Mahogany Drive in Cecil County, Maryland. The details of how the fatal shooting occurred were disputed sharply at Lupfer's trial in the Circuit Court for Cecil County.

Yarbray was invited to the residence—owned by an acquaintance of Lupfer—to sell narcotics to Lupfer's companions. Lupfer testified that, upon coming out of a bathroom, he observed Yarbray in the living room engaged in a confrontation with Derek Patton, another of Lupfer's acquaintances. Lupfer testified further that he saw a handgun laying in the middle of the floor near the confrontation and, sensing a "threatening situation," reached down to pick up the gun, at which time Yarbray reached simultaneously for and grabbed the gun. Allegedly, during the course of a brief struggle between Lupfer and Yarbray, the gun discharged three times. Lupfer's defense at trial was that the gun discharged accidentally in the course of the struggle, and that Lupfer had no intent to kill or inflict deadly harm upon Yarbray.

The State's witnesses attested to renditions of the events leading up to the fatal shooting different than Lupfer's version. Patton and Joshua Jackson (Patton's cousin) testified that, when Yarbray entered the townhouse, Lupfer asked Yarbray, "Do you remember me?" A struggle ensued between the two. Jesse Kennedy, yet another acquaintance of Lupfer, testified that Lupfer struck Yarbray in the face with a handgun and, after Yarbray "crawl[ed] out [the] front door" and "stumbled down the steps, ... [Lupfer] went over to the door and opened the door and began to fire shots." Jackson testified that, after Lupfer asked Yarbray, "Do you remember me?" he saw Yarbray "push[ ] his hands up in the air," and that, after Jackson ran out the back door of the residence, he heard approximately three gunshots. Kyle Slayman, a neighbor, testified that he saw "a guy running and ... [saw] gunshots shooting him and he fell to the ground," and that he saw Lupfer "coming from the house" while "shooting the guy."

A few days after the shooting, a resident of a nearby trailer park found a handgun laying near his pickup truck and called 911. Ballistics testing showed that the gun recovered from the trailer park fired at least one of the bullets recovered from Yarbray's body. Forensic analysis revealed Lupfer's DNA on the trigger guard and handgrip of the gun.

Lupfer testified that, following the shooting, he ran out the back of the residence, threw the gun in the nearby woods, and encountered a former co-worker who agreed to give him a ride in his truck to New Jersey, where Lupfer claimed to have another friend with whom he could stay. After reaching New Jersey, Lupfer claimed he called his girlfriend, Pam Hamilton, in Maryland, to come pick him up, "[b]ecause I had time to think about what was going on and I needed to come back to Maryland." Lupfer stated that, on his return to Maryland, he intended to go to Hamilton's house "[b]ecause I had been up for almost two days and I wasn't prepared mentally or physically to deal with going to turn myself in instantly," and, therefore, he was going to "[t]ry to get some sleep and prepare to go talk to the police." Upon Hamilton's arrival in New Jersey, a truck driver agreed to drive Lupfer and Hamilton to a truck stop in Cecil County. Ultimately, the police arrested Lupfer later that night, as he was resting in the cab of the truck driver's truck, now back in Cecil County.

After the conclusion of Lupfer's direct testimony, the following bench conference ensued:

[PROSECUTOR]: Your Honor, may we approach briefly, please?

[COURT]: Come on up.

[PROSECUTOR]: Your Honor, among other things that this defendant has said in the course of his testimony is that he intended to speak to police. In fact, after he was arrested he was questioned and he elected not to say anything to police. Ordinarily I could not comment upon that, but it appears to me that when a defendant such as Mr. Lupfer gives testimony that he intended to speak to police, even as he was in New Jersey according to his testimony, deliberating about the issue of turning himself in, I believe that has now opened the door to that cross-examination. Before I go there, I just wanted to bring that matter to the bench.

[COURT]: Uh-huh.

[DEFENSE COUNSEL]: I don't think that he is. And the reason is because Mr. Lupfer originally did not think that there was going to be a serious charge such as murder brought against him. And when the police arrested him and told him that, he said, [o]h, shit, this is more serious than I thought.

[COURT]: Okay.

[DEFENSE COUNSEL]: I better talk to my attorney.

[COURT]: Okay. Well, you can bring that out but I think the door has been opened. I think you're right, [prosecutor].

Thereafter, the prosecutor cross-examined Lupfer in the following fashion regarding his return to Cecil County from New Jersey:

[PROSECUTOR]: [Y]ou were coming back to Cecil County because you wanted to turn yourself in.

[LUPFER]: Yes.

[PROSECUTOR]: You wanted to talk to the police, right?

[LUPFER]: I wanted to get the situation straightened out.

[PROSECUTOR]: You wanted to try to clear yourself, right?

[LUPFER]: I wanted to get the situation—I'm not sure of my intentions, but running was not my intention. It was just going to get worse and I knew there is only one person that is going to say what needs to be said, and that was me.

\*       \*       \*

[PROSECUTOR]: Mr. Lupfer, after the police arrested you, they took you back to the police station, right?

[LUPFER]: Yes, sir.

[PROSECUTOR]: And they asked you if you wanted to talk about what had happened, correct?

[LUPFER]: No, they did not.

[DEFENSE COUNSEL]: Objection. I objected, Your Honor.

[COURT]: The objection and the reason therefore is on the record. Go ahead.

[PROSECUTOR]: They asked you if you wanted to talk about what happened; is that correct, Mr. Lupfer?

[LUPFER]: No, sir. It's not correct. Would you like me to tell you what took place when I got there?

[PROSECUTOR]: Well, I'm sure they took your finger-prints and took your photographs. I mean, we know that so I'm not interested in that.

[LUPFER]: Yes, sir.

[PROSECUTOR]: But I'm just wanting to know whether they offered you the opportunity to tell your side of the story.

[LUPFER]: No. Before they slid the charges charging me with first degree murder, before they slid them charges in front of me, no, they did not give me a chance to say anything. And when I seen the charges, I asked for a lawyer.

As a rebuttal witness, the State called Sergeant David J. Sexton of the Maryland State Police, who acted as the lead investigator in the case.

[PROSECUTOR]: What, if any, efforts did you make to question Mr. Lupfer about this case subsequent to arrest? And I take Mr. Brown's objection to be preserving the record for his earlier objection.

[COURT]: Overruled.

[SERGEANT SEXTON]: When we brought him back to the barrack, we placed him in an interview room. I came in with another investigator, Corporal or TFC Bachtell. Basi-cally I sat down with [Lupfer] and advised him that—I asked him, I said, [Lupfer], you know why you're here, but before I start asking any questions of you, I'm going to read you your advice of rights, and I read them verbatim.

During that time [Lupfer] had asked me what he was being charged with. I told him he was being charged with murder as a result of what happened over in Timberbrook,

and that's when I read him his advice of rights and he elected not to answer any questions. He said he would have to talk to a lawyer because those charges were very serious and he wanted to speak to a lawyer.

The jury acquitted Lupfer of first-degree murder, but convicted him of second-degree murder, first-degree assault, and use of a handgun in a crime of violence. The Circuit Court sentenced Lupfer to forty years' incarceration.

Petitioner appealed timely to the Court of Special Appeals. A panel of the intermediate appellate court, in a reported opinion, *Lupfer v. State*, 194 Md.App. 216, 4 A.3d 32 (2010), affirmed the judgment of the Circuit Court, explaining that, although this Court stated in *Grier v. State*, 351 Md. 241, 258, 718 A.2d 211, 219 (1998), that "[e]vidence of post-arrest silence, after *Miranda* warnings are given, is inadmissible for any purpose, including impeachment," we "did not hold that post-*Miranda* silence was inadmissible in the situation where it is offered for a purpose other than as substantive evidence of guilt or to impeach an affirmative defense." *Lupfer*, 194 Md.App. at 231, 4 A.3d at 41. The Court of Special Appeals cited with approval federal cases holding that introducing a defendant's post-arrest, post-*Miranda* silence is permissible where the "silence is introduced for the limited purpose of rebutting an impression created by the defendant that he cooperated fully with the police." *Lupfer*, 194 Md.App. at 235, 4 A.3d at 43.

Applying its understanding of the law relating to the admissibility of post-arrest, post-*Miranda* silence, the intermediate appellate court explained:

Here, [Lupfer] testified that, although he fled to New Jersey after the shooting, he returned to Maryland to turn himself in to the police. On cross-examination, before being questioned regarding his actions after arrest, appellant testified that he wanted to talk to the police "to get the situation straightened out," stating that he "knew that there was only one person that is going to say what needs to be said, and that was me." This testimony created the impres-

sion that appellant was cooperating fully with the police. Pursuant to the above authorities, it was not fundamentally unfair for the State to rebut this impression of cooperation and elicit evidence that appellant subsequently declined to talk with the police.

*Lupfer,* 194 Md.App. at 237, 4 A.3d at 44.[3, 4]

Petitioner filed timely a petition for writ of certiorari, which we granted, *Lupfer v. State,* 417 Md. 384, 10 A.3d 199 (2010), to consider whether "the trial court err[ed] when it permitted the State, over objection, to introduce evidence that after being arrested, '*Mirandized,*' and informed of the charges against him, Mr. Lupfer did not make a statement to police

---

**3.** Rejecting Lupfer's argument that, notwithstanding the federal case-law, evidence of his post-arrest, post-*Miranda* silence is inadmissible under Article 22 of the Maryland Declaration of Rights, the Court of Special Appeals explained:

    Here, although [Lupfer] states generally that Article 22 of the Maryland Declaration of Rights has been construed more broadly than the Fifth Amendment in some instances, he has made no specific argument why this Court should construe the State constitution more broadly than the Fifth Amendment in regard to the issue presented in this case, i.e., the constitutionality of admitting evidence of post-*Miranda* silence to rebut the impression created by the defense that the defendant cooperated fully with the police. Accordingly, we will not address this issue.

*Lupfer v. State,* 194 Md.App. 216, 238, 4 A.3d 32, 45 (2010). *See infra* note 10.

**4.** The Court of Special Appeals declined to address Lupfer's contention that "the trial court erred in permitting the State to introduce the fact that Lupfer, when questioned by police, asked to speak with an attorney," explaining that, having not "object[ed] or otherwise alert[ed] the court that an analysis different from that regarding the admission of his silence was required," the argument was not preserved for appellate review. *Lupfer,* 194 Md.App. at 241, 244, 4 A.3d at 46, 48.

    Finally, the intermediate appellate court rejected Lupfer's argument that the trial court "abused [its] discretion in failing to afford Lupfer a remedy after ruling that several of the State's witnesses violated the court's sequestration order." *Lupfer,* 194 Md.App. at 246, 4 A.3d at 49–50. Lupfer did not raise the issue of the sequestration order in his petition for writ of certiorari, and, accordingly, that issue is not before this Court. *See Garner v. Archers Glen Partners, Inc.,* 405 Md. 43, 61, 949 A.2d 639, 649 (2008) ("We ... decline to address an issue not raised fairly in an otherwise successful Petition for Writ of Certiorari.").

and asked to speak to an attorney[.]" For reasons to be explained more fully *infra*, we reverse the judgment of the Court of Special Appeals, and direct remand of the case to the Circuit Court for Cecil County for a new trial.

## STANDARD OF REVIEW

It is well-settled that "trial judges have wide discretion to admit or exclude items of evidence...." *Gauvin v. State*, 411 Md. 698, 710, 985 A.2d 513, 520 (2009). Where the evidentiary ruling is a discretionary one, "a trial court's ruling on the admissibility of evidence is reviewed pursuant to the 'abuse of discretion' standard." *Brown v. Daniel Realty Co.*, 409 Md. 565, 583, 976 A.2d 300, 310 (2009). Where, however, the evidentiary ruling case "involves an interpretation and application of ... case law, our Court must determine whether the lower court's conclusions are 'legally correct' under a [nondeferential] standard of review." *Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175, 184 (2006).

## ANALYSIS

The Fifth Amendment to the United States Constitution, made applicable to the states by incorporation through the Due Process Clause of the Fourteenth Amendment, *see Sapero v. Mayor & City Council of Baltimore*, 398 Md. 317, 343, 920 A.2d 1061, 1076 (2007), provides, in pertinent part, "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." U.S. CONST. amend. V. In *Miranda. v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966), the Supreme Court held that:

[T]he prosecution may not use statements ... stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards.... Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

Although the *Miranda* warnings inform a suspect in a criminal investigation of the potential consequences of making a statement to law enforcement personnel, they do not speak directly to any potential consequences for remaining silent. To this point, in *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98 (1976), the Supreme Court noted that, "while it is true that the *Miranda* warnings carry no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." *See Dean v. Young*, 777 F.2d 1239, 1241 (7th Cir.1985) ("The state may not first implicitly warn the defendant that silence will not be used against him and then accost him at trial once he remains silent."); *Crosby v. State*, 366 Md. 518, 527, 784 A.2d 1102, 1107 (2001) ("An inherent component of this guarantee is that one who invokes the privilege against self-incrimination shall remain free from adverse presumptions surrounding the exercise of such right.").

For the last number of decades, the courts of this State and other states, as well as the federal courts, have fleshed out the reach of the prohibition against "penalizing" a defendant for remaining silent. The caselaw differentiates generally between pre-[5] and post-arrest silence, and regarding post-arrest

---

**5.** In *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86, 96 (1980), the Supreme Court held that the use of pre-arrest silence to impeach a defendant's credibility does not violate the Constitution because, where "the failure to speak occurred before the [defendant] was taken into custody and given *Miranda* warnings," "no governmental action induced [a defendant] to remain silent...." In Maryland, in *Robeson v. State*, 39 Md.App. 365, 386 A.2d 795 (1978)—some two years prior to *Jenkins*—the Court of Special Appeals held that introduction on cross-examination of a defendant's prearrest silence is not unconstitutional, explaining that the appellant's "actions in not communicating with the police [did not] amount to silence in the constitutional sense of that word" because "silence" in that context "is the Fifth Amendment right to remain silent when confronted by one's accusers following an arrest or in a custodial interrogation setting." *Robeson*, 39 Md.App. at 368, 386 A.2d at 797. Yet, in *Key–El v. State*, 349 Md. 811, 819, 709 A.2d 1305, 1308 (1998), we held that the fact of pre-arrest silence is admissible where the silence amounts to a "tacit admission." We clarified in *Weitzel v. State*, 384 Md. 451, 456, 863 A.2d 999, 1002 (2004), however, joining an "increasing number of jurisdictions ... [to] h[o]ld" that when such a tacit admission is made

silence, between pre-[6] and post-*Miranda*[7] silence. This case presents us with the opportunity to determine whether the State's use of Petitioner's post-arrest, post-*Miranda* silence may be used against him to "fairly respond" to an argued inference that Petitioner sought to create a favorable impression that he returned to Maryland intending to cooperate with the police.

## I. The Sounds of Silence

The Supreme Court, this Court, and commentators warn at length about the dangers of introducing at trial the fact that a defendant in a criminal case decided not to speak to law enforcement personnel, especially where that refusal occurred following arrest and after the defendant is advised of his or her *Miranda* rights. In *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), the Supreme Court noted generally that, "[i]n most circumstances[,] silence is so ambiguous that it is of little probative force" and more specifically regarding post-arrest, post-*Miranda* silence:

> [T]he situation of an arrestee is very different, for he is under no duty to speak and . . . has ordinarily been advised by government authorities only moments earlier that he has a right to remain silent, and that anything he does say can and will be used against him in court.

in the presence of a police officer such "evidence is too ambiguous to be probative," and thus such tacit admissions are inadmissible.

6.  In *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490, 494 (1982) (per curiam), the Supreme Court held that it is not unconstitutional to use post-arrest, pre-*Miranda* silence, explaining that post-arrest silence is admissible "[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings...." In Maryland, in *Kosh v. State*, 382 Md. 218, 220, 854 A.2d 1259, 1261 (2004), we held that, under Maryland law, "[p]ost-arrest silence is inadmissible as substantive evidence of a criminal defendant's guilt, regardless of whether that silence precedes the recitation to the defendant of *Miranda* advisements."

7.  We held in *Dupree v. State*, 352 Md. 314, 316, 722 A.2d 52, 53 (1998), that the State may not even "elicit testimony that the police read the defendant his *Miranda* rights," where "the defendant chose to remain silent when questioned by the police after his arrest...."

At the time of arrest and during custodial interrogation, innocent and guilty alike—perhaps particularly the innocent—may find the situation so intimidating that they may choose to stand mute. A variety of reasons may influence that decision. In these often emotional and confusing circumstances, a suspect may not have heard or fully understood the question, or may have felt there was no need to reply. He may have maintained silence out of fear or unwillingness to incriminate another. Or the arrestee may simply react with silence in response to the hostile and perhaps unfamiliar atmosphere surrounding his detention.

*Hale,* 422 U.S. at 176–77, 95 S.Ct. at 2136–37, 45 L.Ed.2d at 104 (internal citation omitted); *see Doyle,* 426 U.S. at 618, 96 S.Ct. at 2245, 49 L.Ed.2d at 97 ("Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested."). In addition to explaining why post-arrest, post-*Miranda* silence has scant probative value, the Supreme Court went on to discuss the "significant potential for prejudice" inherent in admitting evidence relating to a defendant's silence:

The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted. And permitting the defendant to explain the reasons for his silence is unlikely to overcome the strong negative inference that the jury is likely to draw from the fact that the defendant remained silent at the time of his arrest.

*Hale,* 422 U.S. at 180, 95 S.Ct. at 2138, 45 L.Ed.2d at 107.

In Maryland, we have said that, "[i]n general, silence is evidence of dubious value that it is usually inadmissible under Maryland Rule 5–402 [relevance] or 5–403 [prejudice]." *Kosh v. State,* 382 Md. 218, 227, 854 A.2d 1259, 1265 (2004). On the issue of probity of post-arrest, post-*Miranda* silence, in *Grier,* 351 Md. at 254–55, 718 A.2d at 218, we stated that:

[A] defendant's failure to come forward does not constitute an admission, and lacks probative value. Citizens ordinarily

have no legal obligation to come forward to the police. Failure to come forward to the police may result from numerous factors, including a belief that one has committed no crime, general suspicion of the police, or fear of retaliation. Such silence is simply not probative as substantive evidence of guilt.

(Citations omitted.); *see Snyder v. State*, 361 Md. 580, 594, 762 A.2d 125, 133 (2000) ("When viewed in the context of the petitioner[']s right to remain silent, the admission of the petitioner's silence as evidence of his consciousness of guilt ... has an element of unfairness, and is not very probative of that fact."). Regarding the potential for prejudice inherent in admitting evidence of post-arrest, post-*Miranda* silence, we explained:

The prejudice to a defendant resulting from reference to his silence is often substantial. As the Fifth Circuit observed, "we would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt." *Walker v. United States*, 404 F.2d 900, 903 (5th Cir.1968). Silence at the time of arrest has a significant potential for unfair prejudice.

*Grier*, 351 Md. at 263, 718 A.2d at 222 (some citations and quotation marks omitted).

## II. A More Nuanced Look at the Evolution of the Federal Law of Post–Arrest, Post-*Miranda* Silence

In *United States v. Hale, supra*, noting the "importance of th[e] question to the administration of justice," the Supreme Court dealt with "whether a defendant can be cross-examined about his silence during police interrogation [post-arrest and post-*Miranda* ] ...." *Hale*, 422 U.S. at 173, 95 S.Ct. at 2135, 45 L.Ed.2d at 103. In *Hale*, the defendant was convicted in the U.S. District Court for the District of Columbia of robbery. At his trial, "the prosecutor asked the [defendant] why he had not given the police his alibi when he was questioned shortly after his arrest." *Hale*, 422 U.S. at 172, 95 S.Ct. at 2134, 2135, 45 L.Ed.2d at 102. The Supreme Court, relying

not on constitutional principles, but on its general supervisory powers over the federal (and District of Columbia) courts, explained that admitting such post-arrest, post-*Miranda* silence was error because "the probative value of [defendant]'s pretrial silence in this case was outweighed by the prejudicial impact of admitting it into evidence." *Hale*, 422 U.S. at 173, 95 S.Ct. at 2135, 45 L.Ed.2d at 103.

Because the Supreme Court in *Hale* disposed of the case on evidentiary grounds, it did not address the question of whether admitting evidence of the silence would be unconstitutional. *See id.* It would be less than a year, however, before the Supreme Court would "decide whether impeachment use of a defendant's post-arrest silence violates any provision of the Constitution...." *Doyle*, 426 U.S. at 615, 96 S.Ct. at 2244, 49 L.Ed.2d at 97. In *Doyle*, co-defendants were convicted of selling marijuana to a police informant. *Doyle*, 426 U.S. at 611, 96 S.Ct. at 2241, 49 L.Ed.2d at 94. At trial, they claimed that the informant framed them, and that it was the informant who sold the marijuana to them. *Doyle*, 426 U.S. at 612–13, 96 S.Ct. at 2242, 49 L.Ed.2d at 95. On cross-examination, the prosecution, in an attempt to undercut this explanation, "asked each [defendant] . . . why he had not told the frameup story to [the police officer] when he arrested [them]." *Doyle*, 426 U.S. at 613, 96 S.Ct. at 2242, 49 L.Ed.2d at 95. In holding that the use of the post-arrest silence violated the Due Process Clause, the Supreme Court explained that, because "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested," "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle*, 426 U.S. at 617, 618, 96 S.Ct. at 2244, 2245, 49 L.Ed.2d at 97, 98. Putting the first dent in the hard-and-fast rule on non-admissibility, however, the Supreme Court, in a footnote, emphasized that:

It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not

be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest.

*Doyle*, 426 U.S. at 620 n. 11, 96 S.Ct. at 2246 n. 11, 49 L.Ed.2d at 99 n. 11;[8] *see People v. Rehbein*, 74 Ill.2d 435, 24 Ill.Dec. 835, 386 N.E.2d 39, 42 (1978) (referring to this footnote as "an exception to the strict ban on reference to silence").

In *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), the Supreme Court provided another exception to the blanket rule of inadmissibility of post-arrest, post-*Miranda* silence. In *Robinson*, a defendant was convicted in a jury trial in the United States District Court for the Middle District of Tennessee of two counts of mail fraud. *Robinson*, 485 U.S. at 26, 108 S.Ct. at 866, 99 L.Ed.2d at 27. During closing argument, Robinson's counsel urged "that the Government had not allowed [the defendant] to explain his side of the story." *Id.* In responding to this assertion, during rebuttal, the prosecutor informed the jury that Robinson "could have taken the stand and explained it to you[.]" *Id.* The Supreme Court held "that there was no constitutional error at all" because "the prosecutorial comment did not treat the defendant's silence as substantive evidence of guilt, but instead referred to the possibility of testifying as one of several opportunities which the defendant was afforded, contrary to the statement of his counsel, to explain his side of the case." *Robinson*, 485 U.S. at 30, 32, 108 S.Ct. at 867, 869, 99 L.Ed.2d at 30, 31. The Supreme Court continued: "[W]here . . . the prosecutor's reference to the defendant's opportunity to testify *is a fair response* to a claim made by defendant or his counsel, we think there is no violation of the privilege." *Id.* (emphasis added). Thus, in *Doyle*, the Supreme Court established what has been labeled the "fair response doctrine."

_____

8. In *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), the Supreme Court clarified that a *Doyle* violation occurs only when the trial court permits the prosecution to use the post-arrest silence to impeach, and not in situations in which the trial judge sustains defense counsel's objection and the judge provided curative instructions to the jury.

*See, e.g., Commonwealth v. Lettau,* 604 Pa. 437, 986 A.2d 114, 120 n. 7 (2009).

### III.   A More Nuanced Look at the Evolution of the Maryland Law of Post–Arrest, Post-*Miranda* Silence

That the Supreme Court holds that it is not unconstitutional for a prosecutor to offer evidence relating to a defendant's post-arrest, post-*Miranda* silence in "fair response" to a claim made by defendant does not end our inquiry.   Although holdings of the high Court serve as a national federal "constitutional minimum," *see Baldwin v. State,* 324 Md. 676, 683, 598 A.2d 475, 478 (1991), the Supreme Court recognized that state courts are "not force[d] . . . to allow impeachment through the use of . . . silence.   Each jurisdiction remains free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial." *Jenkins,* 447 U.S. at 240, 100 S.Ct. at 2130, 65 L.Ed.2d at 96; *see Fletcher,* 455 U.S. at 605, 102 S.Ct. at 1311, 71 L.Ed.2d at 493 ("The principles which evolved on the basis of decisional law dealing with appeals within the federal court system are not, of course, necessarily based on any constitutional principle. Where they are not, the States are free to follow or to disregard them so long as the state procedure as a whole remains consistent with due process of law.").   Thus, our task is to determine, under our evidentiary rules and caselaw, whether it was error for the prosecutor to elicit evidence regarding Petitioner's post-arrest, post-*Miranda* silence.

Petitioner argues generally that "Article 22 of the Declaration of Rights provides heightened protection to the right to silence."   Article 22 of the Maryland Declaration of Rights provides "[t]hat no man ought to be compelled to give evidence against himself in a criminal case."   We have stated repeatedly that "the privilege against self-incrimination protected by Article 22 of the Maryland Declaration of Rights '*generally*' is '*in pari materia*' with the Self–Incrimination Clause of the Fifth Amendment." *Marshall v. State,* 415 Md. 248, 259, 999 A.2d 1029, 1035 (2010).   A common misperception notwithstanding—that statutory or constitutional provi-

sions that are *"in pari materia"* with one another must be construed in a like manner—we said that "simply because a Maryland constitutional provision is *in pari materia* with a federal one ... does *not* mean that the provision will *always* be interpreted or applied in the same manner as its federal counterpart." *Dua v. Comcast Cable of Md., Inc.,* 370 Md. 604, 621, 805 A.2d 1061, 1071 (2002). Not inconsistent then with the phrase, *"in pari materia,"* "we have ... interpreted Maryland's privilege against self-incrimination ... to be more comprehensive than that contained in the federal Bill of Rights." [9] *Newman v. State,* 384 Md. 285, 316, 863 A.2d 321, 339 (2004). Further, more than a half-century ago, in *Allen v. State,* 183 Md. 603, 607, 39 A.2d 820, 821 (1944), we noted that the right to be free from compulsory self-incrimination "has always been liberally construed in order to give the fullest effect to this immunity...." It is through this lens that we evaluate and understand Maryland caselaw regarding post-arrest, post-*Miranda* silence, in prior cases and the present one.[10]

In *Grier, supra,* the defendant was convicted in the Circuit Court for Baltimore City of attempted robbery with a deadly

---

9. We explained that "[t]he predicate for this deviation ... [i]s our State's common law and 'the approach taken by this Court generally with respect to defendants' rights and entitlements in criminal cases.'" *Newman v. State,* 384 Md. 285, 316, 863 A.2d 321, 339 (2004) (quoting *Hardaway v. State,* 317 Md. 160, 168, 562 A.2d 1234, 1238 (1989)).

10. We need only address a constitutional issue "if the testimony ... was proper as a matter of Maryland evidentiary law." *Dupree,* 352 Md. at 323, 722 A.2d at 56. In the present case, despite discussing the constitutional privilege against self-incrimination embodied in Article 22 of the Maryland Declaration of Rights, we are not deciding whether it was unconstitutional for the prosecutor to elicit evidence regarding Petitioner's post-arrest, post-*Miranda* silence; rather, we first must determine whether eliciting such evidence violates Maryland's evidentiary principles. That is not to say, however, that Article 22, the Fifth Amendment, and/or other constitutional principles are irrelevant to the present matter. *See United States v. Hale,* 422 U.S. 171, 180 n. 7, 95 S.Ct. 2133, 2138 n. 7, 45 L.Ed.2d 99, 107 n. 7 (1975) (quoting *Grunewald v. United States,* 353 U.S. 391, 423, 77 S.Ct. 963, 983, 1 L.Ed.2d 931, 954 (1957)) (deciding a case on federal evidentiary rules, but noting that much "evidentiary matter has grave constitutional over-

weapon, maiming, and related offenses. *Grier*, 351 Md. at 244, 718 A.2d at 213. At trial, the trial judge sustained defense counsel's objection to the prosecutor's questioning of an arresting officer about the defendant's post-arrest [11] behavior asking, "[d]id the defendant offer any explanation as to what [the incident] was about?" *Grier*, 351 Md. at 248, 718 A.2d at 214 (emphasis omitted). At a bench conference, the judge informed the prosecutor that the State's question was leading, and the trial court was satisfied with the prosecutor's offer to rephrase the question. *Grier*, 351 Md. at 248, 718 A.2d at 215. Later, however, the prosecutor was permitted to ask the officer—over defense counsel's objection—"[W]hat, if any, explanation did the defendant offer to you ever why he was or why this was taking place?" to which the officer responded, "He didn't offer any." *Id.* (emphasis omitted). We issued a writ of certiorari to "consider whether evidence of [defendant]'s post-arrest silence was admissible as 'fair response' to the defense theory of the case." *Grier*, 351 Md. at 244, 718 A.2d at 213.

We began our analysis by reiterating a few general principles of law relating to the admissibility of post-arrest silence:

---

tones"); *Wills v. State*, 82 Md.App. 669, 677, 573 A.2d 80, 84 (1990) (holding that where "the issue ... may be decided either as a matter of state constitutional law or based on rules of evidence," a court should dispose of the case on evidentiary grounds, because "nothing is better settled than the principle that courts should not decide constitutional issues unnecessarily[.]") (quoting *State v. Raithel*, 285 Md. 478, 484, 404 A.2d 264, 267 (1979)). Ultimately, because, as explained *infra*, we hold that the eliciting of evidence relating to Petitioner's post-arrest, post-*Miranda* silence was impermissible as a matter of evidence law, we need not reach—and Petitioner does not make an independent constitutional argument to this Court—the constitutional issue.

11. Although clear that the silence alluded to by the officer's response to the prosecutor's question was post-arrest, we noted that we could "not determine from the record ... whether there was a period of time when Petitioner was arrested and had not received *Miranda* warnings or whether Petitioner was advised at any time of his *Miranda* rights." *Grier v. State*, 351 Md. 241, 259 n. 7, 718 A.2d 211, 220 n. 7 (1998).

Evidence of post-arrest silence, after *Miranda* warnings are given, is inadmissible for any purpose, including impeachment. *See Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1624 n. 37, 16 L.Ed.2d 694 (1966). As a constitutional matter, allowing such evidence would be fundamentally unfair and a deprivation of due process. As an evidentiary matter, such evidence is also inadmissible. When a defendant is silent following *Miranda* warnings, he may be acting merely upon his right to remain silent. Thus, a defendant's silence at that point carries little or no probative value, and a significant potential for prejudice.

*Grier*, 351 Md. at 258, 718 A.2d at 219–20 (some citations and quotation marks omitted); *see Younie v. State*, 272 Md. 233, 241, 322 A.2d 211, 216 (1974) (quoting *Burko v. State*, 19 Md.App. 645, 652, 313 A.2d 864, 868 (1974)) (stating that "allow[ing] the police to make an accusatory statement to one who had elected to remain silent and then to permit the police to testify that when the defendant had been accused he did not answer" would "cloak[ ] the precepts of *Miranda* in an armor of gauze"). In *Grier*, however, we did not rely only on the aforementioned principles; we also addressed the State's contentions that the admission of evidence relating to post-arrest silence was permissible under either the "opening the door" and "fair response" doctrines.[12] Regarding the opening the

---

12. In *Grier*, the Court appeared to treat the "fair response" and "opening the door" doctrines as separate and distinct concepts. A large number of courts conflate these two doctrines. *See Goldwire v. Folino*, 274 Fed.Appx. 143, 146 (3d Cir.2008) (holding that a prosecutor's commenting on a defendant's Fifth Amendment silence "was a fair response to defense counsel's opening statement" because "defense counsel had opened the door"); *United States v. Martinez–Larraga*, 517 F.3d 258, 269 (5th Cir.2008) (holding that a prosecutor's comment that the defendants "didn't make any statements" "was a fair response to defense counsel's argument" because the defendants "invok[ed] silence as a sword rather than a shield and open[ed] the door to a response"); *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir.1998) ("Under the invited or fair response doctrine, the defense summation may open the door to an otherwise inadmissible prosecution rebuttal."); *United States*

door doctrine, we stated that, although the doctrine operates to make "evidence which was previously irrelevant . . . now relevant through the opponent's admission of other evidence on the same issue," *Grier*, 351 Md. at 260, 718 A.2d at 221 (quoting *Clark v. State*, 332 Md. 77, 85, 629 A.2d 1239, 1240 (1993)), the doctrine does not permit the admission of "evidence that is inadmissible for reasons other than relevancy" or "incompetent" evidence. *Clark*, 332 Md. at 87 n. 2, 629 A.2d at 1244 n. 2. We held that "the State's evidence of Grier's post-arrest silence was incompetent, not merely irrelevant," and, accordingly, the evidence was not admissible under the opening the door doctrine. *Grier*, 351 Md. at 261, 718 A.2d at 221. Finally, regarding the fair response doctrine, we held that because Grier merely "asked the jurors to pay close attention to the police officers' investigation," "[he] had said nothing to generate a response by the State," and, accordingly, the evidence was not admissible under that doctrine. *Grier*, 351 Md. at 263, 718 A.2d at 222.[13]

---

*v. Davis*, No. 1:10–cr–00011, 2010 WL 2571356, at *3–4, 2010 U.S. Dist. LEXIS 59354, at *10 (D.V.I. 15 June 2010) (citing the "fair response" doctrine and saying, "[i]n other words, when a defendant 'opens the door'. . . ."); *Davenport v. Bradt*, 560 F.Supp.2d 313, 322 (W.D.N.Y.2008) (same); *United States v. Pope*, 69 M.J. 328, 337 (C.A.A.F.2011) ("Trial counsel may not do this if the accused has not opened the door under a limited exception such as the fair response doctrine."); *State v. Anglin*, 751 A.2d 1007, 1010 (Me.2010) (holding that because "[d]efense counsel opened the door for the State's questions" regarding post-arrest, post-*Miranda* silence, the State's questions constituted a "fair response" thereto); *Edmond v. State*, 341 S.C. 340, 534 S.E.2d 682, 686 n. 3 (2000) (citing *Robinson* and its "fair response" doctrine, to support the proposition that "[t]he State also may . . . raise a defendant's silence when the *defendant* or his counsel 'open the door' "); *State v. Jones*, 111 Wash.2d 239, 759 P.2d 1183, 1188 (1988) (similar). Put simply, the majority rule seems to be that when the defense has "opened the door," the prosecution is entitled to a "fair response."

13. The Court of Special Appeals addressed a post-arrest, post-*Miranda* silence issue in *Ware v. State*, 170 Md.App. 1, 906 A.2d 969 (2006), *cert. denied*, 396 Md. 13, 912 A.2d 649 (2006), *cert. denied*, 549 U.S. 1342, 127 S.Ct. 2063, 167 L.Ed.2d 770 (2007). In *Ware*, the prosecutor asked the officer who interrogated Ware, who was suspected of murder, "Did you ask him where you could find the gun?" to which the officer replied, "It was asked. I didn't get a response." *Ware*, 170 Md.App. at

## IV. The Present Case

Both Petitioner and the State latch on to different language from *Grier*. Petitioner points to *Grier's* suggestion that "[e]vidence of post-arrest silence, after *Miranda* warnings are given, is inadmissible for any purpose, including impeachment"—citing it throughout his brief in support of his argument of error. Notwithstanding this general statement, the State argues the evidence relating to Petitioner's post-arrest, post-*Miranda* silence was admissible under the "fair response" doctrine. Because Petitioner does not contest the viability *vel non* of the fair response doctrine, our task is to determine whether eliciting evidence relating to Petitioner's post-arrest, post-*Miranda* silence was permissible under the doctrine.

The Supreme Court has provided little guidance as to what circumstances entitle the prosecution to a fair response. *See* Frank R. Herrmann & Brownlow M. Speer, *Standing Mute at Arrest as Evidence of Guilt: The "Right to Silence" Under Attack,* 35 AM. J.CRIM. L. 1, 14 (2007) ("Both the *Doyle* and *Weir* decisions invite confusion as to the limits of their holdings."). From *Doyle*, we learn that the prosecution may employ a fair response relating to a defendant's post-arrest silence to "contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." *Doyle*, 426 U.S. at 620 n. 11, 96 S.Ct. at 2246 n. 11, 49 L.Ed.2d at 99 n. 11. Thus, if a defendant claims to have made a statement following his or her arrest, the prosecution may introduce evidence that the defendant had, in fact, remained silent. *See id.* (stating that, in such circumstances, silence "would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest"); *see Kibbe v. DuBois*, 269 F.3d 26, 34–35 (1st Cir.2001); *United States v.*

---

16 n. 7, 906 A.2d at 987 n. 7 (emphasis omitted). The Court of Special Appeals held that the elicitation of such testimony was error, but ruled ultimately that the error was harmless. *Ware*, 170 Md.App. at 28, 906 A.2d at 985.

*Matthews*, 20 F.3d 538, 552 (2d Cir.1994); *United States v. Conlin*, 551 F.2d 534, 537 (2d Cir.1977); *People v. Adams*, 403 Ill.App.3d 995, 343 Ill.Dec. 470, 934 N.E.2d 1073, 1084 (2010); *Commonwealth v. Lettau*, 604 Pa. 437, 986 A.2d 114, 120 (2009); *Wentz v. State*, 766 N.E.2d 351, 362 (Ind.2002); *Williams v. State*, 197 Ga.App. 368, 398 S.E.2d 427, 428 (1990). Further, from *Robinson*, we learn that the prosecution is entitled to a fair response regarding a defendant's post-arrest silence when either defendant or "his counsel urge[ ] . . . that the Government ha[s] not allowed [defendant] to explain his side of the story." *Robinson*, 485 U.S. at 26, 108 S.Ct. at 866, 99 L.Ed.2d at 27; *see, e.g., People v. Champion*, 134 Cal. App.4th 1440, 37 Cal.Rptr.3d 122, 129 (2005); *People v. Austin*, 23 Cal.App.4th 1596, 28 Cal.Rptr.2d 885, 895 (1994). Aside from these gleanings, the Supreme Court has said little else to clarify in what circumstances the State may be entitled to a fair response. *See Robinson*, 485 U.S. at 32, 108 S.Ct. at 869, 99 L.Ed.2d at 31 (stating only that there is no violation "where . . . the prosecutor's reference to the defendant's [silence] . . . is a fair response *to a claim made by defendant or his counsel* . . . .") (emphasis added). Surveying caselaw from other courts seems apropos.

In *United States v. Fairchild*, 505 F.2d 1378, 1380 (5th Cir.1975), defendant was convicted of receiving stolen vehicles, in violation of the Dyer Act, 18 U.S.C. § 2313. During cross-examination of an investigating FBI agent, defendant's counsel asked the agent: "During the period of time that this investigation has been going on, to your knowledge has Mr. Fairchild cooperated fully with the FBI and U.S. Attorney's office in responding with anything that you all wanted?" *Fairchild*, 505 F.2d at 1383. The detective responded that the defendant, after being advised of his *Miranda* rights, refused to make a statement to law enforcement officials. *Fairchild*, 505 F.2d at 1382. In holding that eliciting evidence of the defendant's post-*Miranda* silence was not error, the Fifth Circuit Court of Appeals explained that such evidence is "admissible for the purpose of rebutting the impression which [the defendant] attempted to create: that he cooperated fully

with the law enforcement authorities." *Fairchild,* 505 F.2d at 1383. Although by cross-examining the FBI agent as he did, the defendant "opened the door to a full and not just a selective development of that subject," the federal appeals court upheld the ruling of the district court ultimately because defendant's counsel did not object or move to strike the agent's response. *Fairchild,* 505 F.2d at 1383, 1384. Thus, the reasoning in *Fairchild* may be read to endorse, procedural mis-steps aside, the proposition that when either the defendant or his counsel states expressly that the defendant cooperated fully with law enforcement officials, the prosecution may introduce evidence of the defendant's post-arrest, post-*Miranda* silence for the purpose of showing that the defendant, in fact, had not been cooperative with law enforcement. *See, e.g., United States v. O'Keefe,* 461 F.3d 1338, 1348 (11th Cir.2006) (stating in dicta that evidence relating to defendant's post-*Miranda* silence was admissible "for the purpose of rebutting his claim that he . . . was, in essence, working with law enforcement in the fight against internet child predators").

Some cases have gone further, holding that the Government may introduce permissibly evidence relating to post-arrest, post-*Miranda* silence, not only when a defendant or his counsel states expressly that he cooperated with law enforcement, but also when the defendant "created an impression of general cooperation with police after arrest. . . ." *United States v. Shue,* 766 F.2d 1122, 1129 (7th Cir.1985). In *Shue,* defendant was convicted of bank robbery and conspiracy. *Shue,* 766 F.2d at 1125. At trial, the prosecutor cross-examined Shue at length regarding his refusal to talk to authorities after being advised of his *Miranda* rights. *See Shue,* 766 F.2d at 1128. The Seventh Circuit Court of Appeals explained that, because the defendant stated that he cooperated when asked for fingerprints, hair and handwriting samples, and to appear in lineups, "although [defendant] never directly claimed to have cooperated fully with the authorities after his arrest, this exchange did create the impression of general cooperation," and, thus, the "defendant should not be permitted to twist his *Miranda* protection to shield lies or false impressions from

government attack." *Shue*, 766 F.2d at 1129. Thus, the line of cases that *Fairchild* and *Shue* represent stands for the proposition that "a defendant may open the door to cross-examination for impeachment purposes by testifying or creating the impression through his defense presentation he has cooperated with police when, in fact, he has not." *State v. McIntosh*, 358 S.C. 432, 595 S.E.2d 484, 491 (2004); *see Lupfer v. State*, 194 Md.App. 216, 235, 4 A.3d 32 (2010) ("[C]ourts have held that a prosecutor properly may question a criminal defendant about post-*Miranda* silence ... where the defendant's silence is introduced for the limited purpose of rebutting an impression created by the defendant that he cooperated fully with the police.").

In the present case, in arguing that Petitioner opened the door to Sergeant Sexton's testimony in fair response regarding Petitioner's post-arrest, post-*Miranda* silence, the State points to the following testimony from Petitioner:

*Direct Examination:*

(1) Petitioner stating that he called Hamilton to pick him up in New Jersey so that she could take him "[b]ack to Maryland," "[b]ecause I had time to think about what was going on and I needed to come back to Maryland."

(2) Petitioner stating that his intention was, upon returning to Maryland from New Jersey, to go to Hamilton's house, "[b]ecause I had been up for almost two days and I wasn't prepared mentally or physically to deal with going to turn myself in instantly," so he was going to "[t]ry to get some sleep and prepare to go talk to the police."

*Cross–Examination:* [14]

---

**14.** At oral argument, there was discussion of the extent to which a defendant may open the door to the admission of evidence relating to post-arrest, post-*Miranda* silence, not solely on direct examination by his own counsel, but on cross-examination as well. Because we conclude that, even considering Petitioner's statements on cross-examination, Petitioner did not open the door to a fair response relating to Petitioner's silence, we need not decide that question today. We do note, however, a line of cases questioning whether a defendant's testi-

(1) Petitioner answering "Yes" to the prosecutor's question, "[You were] thinking about coming back to Cecil County because you wanted to turn yourself in[?]"

(2) Petitioner responding, "I wanted to get the situation straightened out," to the prosecutor's question, "You wanted to talk to the police, right?"

(3) Petitioner saying, "I wanted to get the situation—I'm not sure of my intentions, but running was not my intention. It was just going to get worse and I knew there is only one person that is going to say what needs to be said, and that was me," to the prosecutor's question, "You wanted to try to clear yourself, right?"

The State did not elicit the testimony of Sergeant Sexton for the purposes of rebutting the Petitioner's claim that he cooperated fully with police or that he created an impression or implication that he had cooperated fully with the police. Rather, using the State's words, "Lupfer ... created the impression for the jury that he fully *intended* to cooperate and speak with the police," at some unspecified, undetermined, future time when he reached Maryland. Although the distinction between claiming to have cooperated with police and claiming to intend, at some undetermined point in the future, to cooperate with police may seem subtle, it is not a distinction without a difference in the context of this analysis. As one court stated, "courts have recognized situations in which it is not a violation of due process for the prosecutor to elicit on cross-examination the fact of the defendant's post-*Miranda* silence for the purpose of impeaching the defendant's testimony *about his or her interactions with the police after the arrest.*" *State v. Cockrell*, 306 Wis.2d 52, 741 N.W.2d 267, 271

mony on cross-examination may open the door to the prosecution's admission of evidence relating to the defendant's silence. *See, e.g., United States v. Shue,* 766 F.2d 1122, 1131 (7th Cir.1985) (refusing to grant the prosecution a fair response "beyond those cases in which the defendant offers his explanation as part of a deliberate defense strategy"); *State v. Wall,* 78 Or.App. 81, 715 P.2d 96, 99 (1986) ("[I]n this case, the evidence that allegedly opened the door was elicited by the prosecutor himself on cross-examination. In this situation, defendant cannot be said to have 'opened the door.' ").

(2007) (emphasis added). In the present case, the testimony proffered by the State to suggest that Petitioner opened the door did not relate to "his interactions with the police after the arrest" (e.g., fully cooperating with police, making a statement to police, etc.); rather, they involved only his actions and intentions *before* he was arrested (e.g., while in New Jersey, he intended to return to Maryland to "prepare to go talk to the police," etc.)

As noted *supra*, the "opening the door" doctrine operates to make "evidence which was previously irrelevant ... now relevant through the opponent's admission of other evidence on the same issue." *Clark*, 332 Md. at 85, 629 A.2d at 1240. Consistent with this precept, evidence of post-arrest silence may be admissible to rebut a defendant's claim that he made a statement to police following arrest, as both the testimony relating to the post-arrest silence and the testimony regarding the statement are "evidence on the same issue." In the present case, however, it cannot be said that both (1) the sum of Petitioner's testimony as to what he intended (in the words of Petitioner's appellate counsel, "potentially and even-tually") to do at some undermined time in the future; and (2) Sergeant Sexton's testimony regarding Petitioner's post-ar-rest, post-post *Miranda* silence are "evidence on the same issue," as an individual may choose not to carry out his expressed intentions (equivocal ones, at that) for any number of reasons. Stated differently, it is not inconsistent necessari-ly for Petitioner to have testified, on one hand, that he, at some undetermined point in the future, intended to speak with police, and, on the other hand, to have remained silent after being read his *Miranda* rights and seeing a charge of first-degree murder made manifest.[15] Therefore, we hold that

---

15. It is conceivable that, thinking he was not going to be charged if his version of what happened on 16 June 2007 at 159 Mahogany Drive was believed, or thinking at least that he was not going to be charged with murder, Petitioner intended initially to speak with law enforcement, but changed his mind after being told he was charged already with first-degree murder. This is consistent with defense counsel's comments to

when the prosecution elicits evidence relating to a defendant's post-arrest, post-*Miranda* silence to rebut an implication that the defendant merely *intended*, at some undetermined point in the future, to cooperate with police, the probative value of such evidence is dwarfed by the danger of unfair prejudice. The evidence is inadmissible under Maryland Rule 5–403.[16]

## V. Harmless Error?

The State argues, in the alternative, "[a]ssuming, *arguendo*, that evidence of Lupfer's post-arrest, post-*Miranda* silence ... was admitted at trial in error, reversal of Lupfer's convictions is not warranted in this case," asserting that any error was harmless. We have stated that "[a]n error is not harmless unless, upon an independent review of the record, a reviewing court is able to declare beyond a reasonable doubt that the error in no way influenced the verdict." *Grier*, 351 Md. at 263, 718 A.2d at 222; *see Weitzel v. State*, 384 Md. 451, 461, 863 A.2d 999, 1005 (2004); *Dupree*, 352 Md. at 333, 722 A.2d at 61. Discussing whether the error in *Dupree* was harmless, we stated:

> Once the State put before the jury the fact that [defendant] had been advised of his rights yet offered no evidence of a subsequent statement by Dupree, the inference of [defendant]'s silence, and thus his guilt, lay dangling for the jury to grab hold. It may well be so that the jury did "take the bait." In our nation, the advice of rights upon arrest, and particularly of the right to remain silent upon arrest ... is widely known. Combined with this commonplace knowledge of the right to remain silent and what it signifies is the taint its invocation places on those who exercise it.

*Dupree*, 352 Md. at 333, 722 A.2d at 61; *see also Walker*, 404 F.2d at 903 ("[W]e would be naive if we failed to recognize

---

the trial court at the bench conference and Petitioner's testimony on cross-examination. *See* Op. at 118–19, 120–21, 21 A.3d at 1084–85, 1085–86.

16. Maryland Rule 5–403 provides, in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."

that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt."). The viability of Petitioner's defense at trial—that Yarbray's death was the unintended consequences of a struggle between Petitioner and Yarbray over a gun—hinged on Petitioner's credibility. We cannot say beyond a reasonable doubt that the error was harmless.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY AND RE-MAND TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY CECIL COUNTY.**